IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

COLBURN L. KINZER, JR.,

                                                      :                    Case No. 3:07-cv-111

        Plaintiff,

  -vs-

                                                      :                    Chief Magistrate Judge Michael R. Merz

CITY OF WEST CARROLLTON, et al.,

        Defendants.

                                                      :

**DECISION AND ORDER**

This case is before the Court on Defendants' Motion for Summary Judgment (Doc. No. 16) which Plaintiff opposes (Doc. No. 22); Defendants have filed a Reply (Doc. No. 23).

**SUMMARY JUDGMENT STANDARD**

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56.  On a motion for summary judgment, the movant has the burden of showing that there exists no genuine issue of material fact, and the evidence, together with all inferences that can reasonably be drawn therefrom, must be read in the light most favorable to the party opposing the motion. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157-59 (1970).  Nevertheless, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment;  the requirement is that there be no *genuine* issue of *material* fact.  *Anderson*

*v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (emphasis in original). Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to "secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

Read together, *Liberty Lobby* and *Celotex* stand for the proposition that a party may move for summary judgment asserting that the opposing party will not be able to produce sufficient evidence at trial to withstand a directed verdict motion (now known as a motion for judgment as a matter of law. Fed. R. Civ. P. 50). *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1989). If, after sufficient time for discovery, the opposing party is unable to demonstrate that he or she can do so under the *Liberty Lobby* criteria, summary judgment is appropriate. *Id*. The opposing party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby,* 477 U.S. at 249-50, 106 S. Ct. at 2510-11 (citations omitted). "The mere possibility of a factual dispute is not enough." *Mitchell v. Toledo Hosp*., 964 F. 2d 577, 582 (6th Cir. 1992)(quoting *Gregg v. Allen-Bradley Co.,* 801 F. 2d 859, 863 (6th Cir. 1986). Therefore a court must make a preliminary assessment of the evidence, in order to decide whether the plaintiff's evidence concerns a material issue and is more than *de minimis*. *Hartsel v. Keys*, 87 F. 3d 795 (6th Cir. 1996). "On summary judgment," moreover, "the inferences to be drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S. Ct. 993, 994, 8 L. Ed. 2d 176 (1962). Thus, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Liberty Lobby,* 477 U.S. at 249, 106 S. Ct. at 2510.

The moving party

> [A]lways bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Celotex,* 477 U.S. at 323; *see also, Boretti v. Wiscomb,* 930 F.2d 1150, 1156 (6th Cir. 1991) (citation omitted). If the moving party meets this burden, the nonmoving party must go beyond the pleadings to show that there is a genuine issue for trial. *Matsushita*, 475 U.S. at 587; *Martin v. Ohio Turnpike Comm'n.*, 968 F. 2d 606, (6th Cir. 1992), *cert. denied*, 506 U.S. 1054, 113 S. Ct. 979, 122 L.Ed.2d 133 (1993).

In ruling on a motion for summary judgment (in other words, determining whether there is a genuine issue of material fact), "[a] district court is not ... obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *Interroyal Corp. v. Sponseller,* 889 F.2d 108, 111 (6th Cir. 1989), *cert. denied,* 494 U.S. 1091 (1990). Thus, in determining whether a genuine issue of material fact exists on a particular issue, a court is entitled to rely only upon those portions of the verified pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties.

## Claims Made

Plaintiff brought this action against the City of West Carrollton, Ohio, and two of its police officers, Sergeant Kori J. Rolando and Officer Mark A. Meyer; the officers are sued individually and in their official capacities. The Complaint purports to state claims for relief arising under 42 U.S.C.

3

§§ 1983 and 1985  Plaintiff alleges in his First Cause of Action that the Officers Rolando and Meyer

(1)     used excessive force in effecting his arrest on March 1, 2006, in violation of the Fourth and Fourteenth Amendments to the United States Constitution;

(2)     subjected him to punishment without benefit of a trial by jury in violation of the Sixth and Eighth Amendments; and

(3)     subjected him to unreasonable restraint of his person without due process in violation of the Fifth Amendment.

(Complaint, Doc. No. 2, at 3.)

In his Second Cause of Action, Plaintiff alleges that Defendant City violated those same constitutional rights by its custom and policy of allowing the use of unreasonable force, by failing to properly train and supervise police officers, and by failing to promulgate policies on detention consistent with those constitutional rights.

The Third Cause of Action again appears to allege deprivation of constitutional rights to equal protection and to be "secure in his person and free from punishment" under the Fourteenth Amendment and the laws of the United States and the State of Ohio.  The Fourth Cause of Action pleads assault and batter under the common law of Ohio.  The Fifth Cause of Action avers that Defendants have conspired to deprive Plaintiff of his rights, giving rise to a cause of action under 42 U.S.C. § 1985.

**Summary of Evidence Presented on Motion**

The facts to which Plaintiff testified at his deposition are as follows: Plaintiff was celebrating his birthday on March 1, 2006  (Plaintiff Depo., Doc. No. 18, p. 13).  In celebration, he began drinking alcohol at the Eagles Lodge in Miamisburg, Ohio.  at 21-23. He continued drinking at the

4

Central Café. *Id*. at 23-24. After leaving the Central, he went to Ron's Pizza, where he continued drinking. *Id*. at 25. He returned to the Central after being at Ron's, but could not remember whether he had anything further to drink on his second visit to the Central. *Id*. at 27-28. He then received a ride to Capo's bar in West Carrollton, but cannot remember anything after he arrived at Capo's until he woke up in the Montgomery County Jail. *Id*. at 33-34. He does not remember the event, but was apparently at the hospital between the time he was at Capo's and the time he remembers in the County Jail.

The only other witness whose deposition is of record in the case is Mark E. Goonan. Mr. Goonan testified he arrived at Capo's about 8:00 p.m. on March 1, 2006 (Goonan Depo, Doc. No. 17, at 6). Mr. Goonan saw Plaintiff drinking at Capo's and remembers that Plaintiff was intoxicated. *Id*. at 12. At some point in time, he heard that Plaintiff was outside with the police. *Id*. at 7. He went outside and the first thing he observed was Plaintiff being placed on the trunk of the police cruiser. *Id*. at 10. He specifically testified he did not witness any interaction between Plaintiff and the police prior to Plaintiff's being restrained. *Id*. at 22.

The Affidavits of Defendants Rolando and Meyer (Exhibits A and B to Doc. No. 16) provide the following uncontradicted facts: They were sent to Capo's on report of a possible liquor control violation, apparently an alleged sale to a minor. While they were standing outside the bar, Plaintiff approached them to complain that the bartender would not serve him another drink. They told him to calm down and go back in the bar. He became agitated and refused to go back in; the bartender then told the officers that Plaintiff was not permitted back in the bar. The officers then called someone to come pick Plaintiff up to take him home. While they were waiting, Plaintiff "aggressively approached Sgt. Rolando and demanded to be allowed to purchase another drink."

Plaintiff's driver arrived, but he refused to go. The officers escorted him to the car and assisted him in getting in, smelling as they did the alcohol on his person. Even though Plaintiff was

5

seated in the vehicle, he kept his right foot outside, preventing the officers from closing the door. At this point the officers advised Plaintiff he was under arrest. After he repeatedly refused to get out of the car, they attempted to remove him. He then attempted to strike Officer Meyer with his left arm. The officers then removed him from the car and placed him on the ground, eventually succeeding in handcuffing and restraining him. Recognizing that an abrasion to Plaintiff's right eye and cheek required medical attention, the officers called for a medic. He was taken to Sycamore Hospital, treated, then released to custody at the Montgomery County Jail. Plaintiff was charged criminally with obstruction of official business, resisting arrest, disorderly conduct, and possession of narcotics. He pled guilty to the first of these charges in return for dismissal of the others.

The sole factual issue on which there is competing evidence is how much force the officers used in placing Plaintiff on the trunk of the car. The officers say they "leaned" Plaintiff on the trunk. Mr. Goonan, in contrast, testified Plaintiff was pushed face down on the trunk "real hard." (Goonan Depo., Doc. No. 17, at 18.) This had the effect of putting Plaintiff "in a daze." *Id*. His glasses were shoved down into his cheeks which were bleeding. *Id*. at 19.

**Applicable Law**

42 U.S.C. §1983, R.S. §1979, was adopted as part of the Act of April 20, 1871, and reads, as amended:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress , except that in any action brought against a judicial officer, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section,

6

> any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

The statute creates a cause of action sounding essentially in tort on behalf of any person deprived of a constitutional right by someone acting under color of state law. *City of Monterey v. Del Monte Dunes at Monterey, Ltd.,* 526 U.S. 687, 709 (1999); *Memphis Community School District v. Stachura,* 477 U.S. 299, 106 S. Ct. 2537, 91 L. Ed. 2d 249 (1986); *Carey v. Piphus,* 435 U.S. 247, 98 S. Ct. 1042, 55 L. Ed. 2d 252 (1978). The purpose of §1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails. *Wyatt v. Cole*, 504 U.S. 158, 1125 S. Ct. 1827, 118 L. Ed. 2d 504 (1992). In order to be granted relief, a plaintiff must establish that the defendant deprived him of a right secured by the U.S. Constitution and the laws of the United States and that the deprivation occurred under color of state law. *See West v. Atkins,* 487 U.S. 42, 48, 108 S. Ct. 2250, 101 L. Ed. 2d 40 (1988); *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S. Ct. 1908, 68 L. Ed. 2d 420 (1981); *Flagg Brothers Inc. v. Brooks*, 436 U.S. 149, 155, 98 S. Ct. 1729, 56 L. Ed. 2d 185 (1978).

Municipalities and other bodies of local government are "persons" within the meaning of §1983 and may therefore be sued directly if they are alleged to have caused a constitutional tort through a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers. *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 690, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). An unconstitutional governmental policy can be inferred from a single decision by the highest officials responsible for setting policy in a particular area of the government's business. *Owen v. City of Independence,* 445 U.S. 622, 100 S. Ct. 1398, 63 L. Ed. 2d 673 (1980); *Pembaur v. City of Cincinnati,* 475 U.S. 469, 106 S. Ct. 1292, 89 L. Ed. 2d 452 (1986). On the other hand, official policy cannot be inferred from the single unauthorized act of a subordinate government agent, e.g., an unauthorized shooting by a police officer. *Oklahoma City v. Tuttle*, 471

7

U.S. 808, 105 S. Ct. 2427, 85 L. Ed. 2d. 791 (1985); *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 311 (6th Cir. 2005)("By itself, 'the wrongful conduct of a single officer without any policy-making authority did not establish municipal policy.'" *quoting Collins v. City of Harker Heights,* 503 U.S. 115, 121, 117 L. Ed. 2d 261, 112 S. Ct. 1061 (1992).

Municipalities and other bodies of local government are "persons" within the meaning of §1983 and may therefore be sued directly if they are alleged to have caused a constitutional tort through a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers. *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 690, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). An unconstitutional governmental policy can be inferred from a single decision by the highest officials responsible for setting policy in a particular area of the government's business. *Owen v. City of Independence,* 445 U.S. 622, 100 S. Ct. 1398, 63 L. Ed. 2d 673 (1980); *Pembaur v. City of Cincinnati,* 475 U.S. 469, 106 S. Ct. 1292, 89 L. Ed. 2d 452 (1986). On the other hand, official policy cannot be inferred from the single unauthorized act of a subordinate government agent, e.g., an unauthorized shooting by a police officer. *Oklahoma City v. Tuttle*, 471 U.S. 808, 105 S. Ct. 2427, 85 L. Ed. 2d. 791 (1985); *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 311 (6th Cir. 2005)("By itself, 'the wrongful conduct of a single officer without any policy-making authority did not establish municipal policy.'" *quoting Collins v. City of Harker Heights,* 503 U.S. 115, 121, 117 L. Ed. 2d 261, 112 S. Ct. 1061 (1992). Only municipal officials with final policymaking authority can subject the municipality to liability. *Pembaur, supra.* Whether a particular official has final policymaking authority is a question of state law. *Pembaur, supra; St. Louis v. Praprotnik*, 485 U.S. 112, 108 S. Ct. 915, 99 L. Ed. 2d 107 (1988); *Jett v. Dallas Ind. School Dist.*, 491 U.S. 701, 737, 109 S. Ct. 2702, 105 L. Ed. 2d 598 (1989). Identification of the official whose decisions represent the official policy of a particular local governmental unit is a question of law to be decided by the judge. *McMillian v. Monroe County, Ala.,* 520 U.S. 781, 784-85, 117 S. Ct.

1734, 1736 (1997), citing *Jett v. Dallas Ind. School Dist*., 491 U.S. 701, 737, 109 S. Ct. 2702, 105 L. Ed. 2d 598 (1989).  The policy must be deliberate and discernible.  *Molton v. City of Cleveland*, 839 F.2d 240 (6th Cir. 1988).  For an act pursuant to custom to subject a municipality to liability, the custom must be so widespread, permanent, and well settled as to have the force of law.  *Board of County Comm'r of Bryan County, Okl., v. Brown,* 520 U.S. 397, 404, 116 S. Ct. 1382, 1388 (1997); *Doe v. Claiborne County, Tenn*., 103 F.3d 495, 507-08 (6th Cir. 1996).  To recover, a plaintiff must identify the policy, connect the policy to the political subdivision itself, and show that the particular injury was incurred because of the execution of that policy.  *Board of County Comm'r of Bryan County, Okl., v. Brown,* 520 U.S. 397, 405, 116 S. Ct. 1382, 1389 (1997); *Garner v. Memphis Police Dept*., 8 F.3d 358, 364 (6th Cir. 1993).  There must be a direct causal link between the policy and the alleged constitutional violation such that the governmental entity's deliberate conduct can be deemed the moving force behind the constitutional violation.  *Graham v. County of Washtenaw*, 358 F.3d 377 (6th Cir. 2004), citing *Waters v. City of Morristown*, 242 F.3d 353, 362 (6th Cir. 2001)(citing *Board of County Comm'r of Bryan County, Okl., v. Brown,* 520 U.S. 397, 404, 116 S. Ct. 1382, 1388 (1997)).

> There are at least four avenues a plaintiff may take to prove the existence of a municipality's illegal policy or custom. The plaintiff can look to (1) the municipality's legislative enactments or official agency policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal rights violations. Id.; *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480, 89 L. Ed. 2d 452, 106 S. Ct. 1292 (1986); *Stemler v. City of Florence,* 126 F.3d 856, 865 (6th Cir. 1997); *Doe v. Claiborne County*, 103 F.3d 495, 507 (6th Cir. 1996).
>
> In the present case, the Thomases alleged that the City of Chattanooga had an unwritten policy, practice, or custom of condoning the use of excessive force against potential suspects. In *Doe*, this Court articulated the requirements for a municipal liability claim made on the basis of an "inaction theory," where a policy of tolerating federal rights violations is unwritten but nevertheless entrenched. We stated that, under such a theory, the plaintiff must show:

9

>(1) the existence of a clear and persistent pattern of [illegal activity];
>
>(2) notice or constructive notice on the part of the [defendant];
>
>(3) the [defendant's] tacit approval of the unconstitutional conduct, such that their deliberate indifference in their failure to act can be said to amount to an official policy of inaction; and
>
>(4) that the [defendant's] custom was the "moving force" or direct causal link in the constitutional deprivation.

*Doe*, 103 F.3d at 508.

*Thomas v. City of Chattanooga,* 398 F.3d 426 (6th Cir., 2005).

Excessive force claims are to be judged on an objective Fourth Amendment basis - whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation. *Johnson v. Glick* 481 F.2d 1028 (2nd Cir. 1973)*,* substantive due process analysis rejected. *Graham v. Connor,* 490 U.S. 386, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989). The right to be free from excessive force is clearly established. *Walton v. City of Southfield,* 995 F.2d 1331, 1342 (6th Cir. 1993); *Holt v. Artis*, 843 F.2d 242, 246 (6th Cir. 1988). Excessive force claims are to be analyzed under the Fourth Amendment's "objectively reasonable" test, not under a substantive due process standard. *Graham v. Connor,* 490 U.S. 386, 394-95, 109 S. Ct. 1865, 1871, 104 L. Ed. 2d 443 (1989); *Pleasant v. Zamieski,* 895 F.2d 272, 275 (6th Cir. 1990). The subjective state of mind of the officer is irrelevant.

Not every push and shove an officer makes during an arrest will subject the officer to §1983 liability. *Collins v. Nagle,* 892 F.2d 489, 496 (6th Cir. 1989). Circumstances to be considered with respect to an excessive force claim include the severity of the criminal conduct at issue, whether the subject posed an immediate threat to the safety of the public and the officer, and whether the suspect was actively resisting arrest. *Graham v. Connor,* 490 U.S. at 396. A reviewing court must consider

these factors from the perspective of a reasonable officer on the scene — a scene that may be tense, uncertain, and rapidly evolving — rather than from the more secure perspective of the judicial chambers." *Id.* at 396.

To be actionable under 42 U.S.C. §1985, a conspiracy must be based on some racial "or perhaps otherwise class-based, invidiously discriminatory animus." *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 113 S. Ct. 753, 122 L. Ed. 2d 34 (1993); *Griffin v. Breckenridge,* 403 U.S. 88, 91 S. Ct. 1790, 29 L. Ed. 2d 338 (1971); *Macko v. Bryon*, 641 F.2d 447 (6th Cir. 1981). A class protected by §1985(3) must possess the characteristics of a discrete and insular minority, such as race, national origin, or gender. *Haverstick Enterprises v. Financial Federal Credit*, 32 F.3d 989 (6th Cir. 1994), citing *Hicks v. Resolution Trust Corp.*, 970 F.2d 378, 382 (7th Cir. 1992).

### Application of Law to the Evidence

**Federal Law Claims**

A suit against a municipal employee in his official capacity is in effect a suit against the municipality itself. *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). Therefore the Complaint against Officers Meyer and Rolando in their official capacities is surplusage, since the City of West Carrollton is also sued.

The Complaint fails to state a claim upon which relief can be granted respecting the alleged deprivation of right to trial by jury since all of the criminal charges made against the Defendant were for misdemeanor offenses carrying maximum penalties of ninety days in jail or less. They are therefore not "serious" offenses under the United States Constitution and Plaintiff had no right to trial by jury. *Blanton v. City of North Las Vegas,* 489 U.S. 538, 109 S. Ct. 1289, 103 L. Ed. 2d 550, (1989); *United States v. Nachtigal,* 507 U.S. 1, 113 S. Ct. 1072, 122 L.Ed.2d 374 (1993). As to the

distinction between petty and serious at six months' confinement, see *Duncan v. Louisiana*, 391 U.S. 145, 88 S. Ct. 1444, 20 L. Ed. 2d 1412 (1968). See Annotation at 103 L. Ed. 2d 1000. Aggregation of multiple petty offenses with an aggregate maximum sentence in excess of six months does not give rise to a jury trial right. *Lewis v. United States*, 518 U.S. 322, 116 S.Ct. 2163, 135 L.Ed.2d 590 (1996); *United States v. Brown*, 71 F.3d 845 (11th Cir. 1996); *United States v. Lewis,* 65 F.3d 252 (2d Cir. 1995).

Plaintiff has presented no facts sufficient to sustain a claim for relief under 42 U.S.C. § 1985, and that claim must be dismissed with prejudice.

Plaintiff has presented insufficient facts to sustain a claim for relief against the City of West Carrollton. He has shown no pattern of toleration by the City of use of excessive force by police officers, nor has he shown a failure to provide adequate training in the use of force. The training records of the two Defendants attached to Chief Barnhart's Affidavit simply do not support the conclusion that the City has been deliberately indifferent to the training of these officers. Plaintiff asserts that the City "ratified" the officers' conduct in this case, but the evidence before the Court is that a sue of force incident report was filed and reviewed by the Chief, along with the incident report. The only witness to any use of force in this case other than the officers is Mr. Goonan who believed that too much force was used in throwing Plaintiff onto the cruiser. The fact that the City, through Chief Barnhart, might not have agreed with Mr. Goonan's evaluation does not prove that the City tolerated an obvious constitutional violation. In any event, the elements to be proved under *Doe, supra*, are cumulative. Plaintiff's § 1983 claim against the City will be dismissed with prejudice.

Because the Sixth Circuit requires excessive force claims in an arrest context to be analyzed under the Fourth Amendment, Plaintiff has not pled a separate "substantive due process" claim against Defendants under the Fourteenth Amendment. Nor has Plaintiff produced any facts which would support a claim that any actions of the Defendants deprived him of equal protection.

Plaintiff's plea of guilty to one of the criminal charges arising out of this incident precludes any claim that he was arrested and detained without probable cause in violation of his right to liberty under the Fourteenth Amendment. *Migra v. Warren City School District Board of Education,* 465 U.S. 75, 104 S. Ct. 892, 79 L. Ed. 2d 56 (1984); *Mulligan v. Schlachter*, 389 F.2d 231 (6th Cir. 1968); *see, Allen v. McCurry,* 449 U.S. 90, 101 S. Ct. 411, 66 L. Ed. 2d 208 (1980).

There remains a genuine issue of material fact whether the force used to arrest Plaintiff was excessive, based on Mr. Goonan's testimony. Whether that testimony will be persuasive to a jury is obviously not a question before the Court on the instant Motion. However, there is insufficient evidence of callous disregard for Mr. Kinzer's rights to warrant submitting any claim of punitive damages to a jury.

**State Law Claims**

The Fourth Cause of Action purports to arise under the common law of Ohio. This Court has subject matter jurisdiction of the claim under 28 U.S.C. § 1367 because it is part of the same cause or controversy as the federal claims.

Defendants claim immunity from Ohio common law liability by virtue of Ohio Revised Code Ch. 2744, relying on Ohio Revised Code § 2744.02(A)(1) in the case of the City and Ohio Revised Code § 2744.03(A)(6) in the case of the individual officers.

In any action in federal court where subject matter jurisdiction is supplemental under 28 U.S.C. § 1367, state substantive law provides the rules of decision. 28 U.S.C. §1652; *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S. Ct. 817, 82 L. Ed. 2d 1188 (1938), overruling *Swift v. Tyson*, 41 U.S. 1, 10 L. Ed. 865 (1841)(Story, J., holding that "the laws of the several states" in the Judiciary Act of 1789 means only the statutory law of the States). In applying state law, the Sixth Circuit follows the law of the State as announced by that State's supreme court. *Ray Industries, Inc. v. Liberty*

*Mut. Ins. Co.*, 974 F.2d 754, 758 (6th Cir. 1992); *Miles v. Kohli & Kaliher Assocs.,* 917 F.2d 235, 241 (6th Cir. 1990). "Where the state supreme court has not spoken, our task is to discern, from all available sources, how that court would respond if confronted with the issue." *Id.; In re Akron-Cleveland Auto Rental, Inc.,* 921 F.2d 659, 662 (6th Cir. 1990); *Bailey v. V & O Press Co.*, 770 F.2d 601 (6th Cir. 1985); *Angelotta v. American Broadcasting Corp.,* 820 F.2d 806 (1987). The available data to be considered if the highest court has not spoken include relevant dicta from the state supreme court, decisional law of appellate courts, restatements of law, law review commentaries, and the "majority rule" among other States. *Bailey*, 770 F.2d at 604. "Where a state's highest court has not spoken on a precise issue, a federal court may not disregard a decision of the state appellate court on point, unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." *Puckett v. Tennessee Eastman Co.*, 889 F.2d 1481, 1485 (6th Cir.1989); *accord Northland Ins. Co. v. Guardsman Products, Inc.*, 141 F.3d 612, 617 (6th Cir.1998). This rule applies regardless of whether the appellate court decision is published or unpublished. *See Talley v. State Farm Fire & Cas. Co.*, 223 F.3d 323, 328 (6th Cir.2000); *Puckett,* 889 F.2d at 1485. *Ziegler v. IBP Hog Market*, 249 F.3d 509, 517 (6th Cir. 2001).

Plaintiff asserts that Ohio Revised Code Ch. 2744 is unconstitutional under the Ohio Constitution, relying on *Kammeyer v. City of Sharonville,* 311 F. Supp. 2d 653 (S.D. Ohio 2003)(Spiegel, J.). Defendants rely on *Estate of Clutters v. Sexton*, 2007 U.S. Dist. LEXIS 84025 (S.D. Ohio 2007)(Barrett, J.), which held to the contrary. Judge Barrett in turn cites to *Webb v. Greene County Sheriff's Office*, 494 F.Supp.2d 779, 797 (S.D.Ohio 2007)(Rice, J.); *Samples v. Logan County*, 2006 U.S. Dist. LEXIS 320, 2006 WL 39265 (S.D.Ohio Jan. 6, 2006) (Smith, J.); and *Grant v. Montgomery County Job & Family Servs.*, 2005 U.S. Dist. LEXIS 32862, 2005 WL 2211266 (S.D.Ohio Sept. 8, 2005) (Beckwith, Ch. J.) all of which have upheld the constitutionality of Ohio Revised Code Ch. 2744. While Judge Spiegel projected in 2003 that the Ohio Supreme Court would

14

declare Chapter 2744 unconstitutional when the issue was properly before it, all of the other judges of this Court who have considered the question have found that projection incorrect and in the five years since *Kammeyer*, the projection has not proved out. The only basis Plaintiff cites for declaring the statute unconstitutional is the *Kammeyer* decision; he does not offer any independent reason and *Kammeyer* is not binding on this Court. In the absence of binding precedent and any other persuasive argument, this Court declines to hold Chapter 2744 unconstitutional.

Under Ohio Revised Code § 2744.02(A)(1), the City of West Carrollton is immune from common law liability because the police function is plainly a governmental function. Under Ohio Revised Code § 2744.03(A)(6), Officers Meyer and Rolando are immune from common law liability because there is no evidence to support a conclusion that they acted outside the scope of their employment or in a wanton or reckless manner.

Plaintiff's state law claims will be dismissed with prejudice.

## Conclusion

Defendants' Motion for Summary Judgment is denied as to his claims of use of excessive force under 42 U.S.C. § 1983 as to Defendants Meyer and Rolando and granted in all other respects.

This case remains set for trial to a jury for two days, commencing September 15, 2008. However, because of an out-of-town commitment, the Court is unable to conduct the final pretrial conference at the time now set, 4:30 p.m. on Monday, September 8, 2008. Counsel will consult with one another and contact Courtroom Deputy Gayle Hays (512.1553) to set a new time.

August 5, 2008.

s/ **Michael R. Merz**
Chief United States Magistrate Judge